**In re Jon M. KNIGHT, Debtor.**

**No. 6:06–bk–01547–ABB.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 28, 2007.

Caryl E. Delano, Addison & Delano, P.A., Tampa, FL, for Debtor.

Jacqueline E. Ferris, Mariane L. Dorris, R. Scott Shuker, Latham Shuker Eden & Beaudine LLP, Orlando, FL, for Petitioning Creditor.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Involuntary Petition (Doc. No. 1) ("Pe-

tition") filed by R.W. Cuthill, Jr. ("Cuthill"), on behalf of Evergreen Security, Ltd. ("Evergreen") as the petitioning creditor, against Jon M. Knight, the alleged Involuntary Debtor herein ("Debtor" or "Knight"), and the Debtor's Answer thereto (Doc. No. 9). Evidentiary hearings were conducted on July 26, 2006 and February 22, 2007 at which the Debtor, his counsel, Cuthill, counsel for Cuthill, and Leigh R. Meininger, the Chapter 7 Trustee, were present.

The matter was taken under advisement and the parties were invited to submit and serve on each other proposed findings of fact and conclusions of law ("FOFCOL") by March 8, 2007. The parties filed their FOFCOL on March 8, 2007 and the Debtor, on March 16, 2007, filed the Debtor's Objections to Evergreen's FOFCOL (Doc. No. 83) ("Objection"). The Debtor did not seek leave of Court to file the Objection outside of the March 8, 2007 submission deadline. Evergreen filed a Motion to Strike the Objection (Doc. No. 84). The Objection was untimely filed and is due to be denied.

The Court makes the following findings and conclusions after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Case Background

Evergreen, a British Virgin Islands International Business Corporation, filed a voluntary Chapter 11 bankruptcy case on January 23, 2001. Cuthill was appointed the Chapter 11 Trustee by Order entered on March 14, 2001 and sole Director and President of Evergreen pursuant to Evergreen's confirmed Plan. Cuthill is the representative of the Evergreen estate and is charged with, among other things, retaining and enforcing causes of action for the benefit of Evergreen's creditors.[1] Evergreen was found to be a Ponzi scheme.

Cuthill instituted Adversary Proceeding No. 6:01–ap–00232–ABB (the "Mataeka AP") against the Debtor, J. Anthony Huggins ("Huggins"), Mataeka, Ltd. ("Mataeka"), and Atlantic Portfolio Analytics & Management, Inc., a/k/a APAM, Inc. ("APAM") seeking the avoidance and recovery of fraudulent transfers. The focus of the Mataeka AP was the 1997 transfer of $6,500,000.00 from Evergreen Trust to Mataeka and the subsequent transfers of the funds to the Debtor, Huggins, and others.[2] The Debtor and Huggins characterized the transfer as a "loan."

The Debtor and Huggins were found to be key players in the Evergreen Ponzi scheme and orchestrated the unlawful transfer of $6,500,000.00 from Evergreen Trust to themselves and various entities they controlled. A Memorandum Opinion and Judgment (collectively, "the Mataeka Judgment") were entered on March 22, 2006 awarding judgment to Evergreen and against the defendants.[3] Judgment was entered against the Debtor, Huggins, and Mataeka (found to be the Debtor's and Huggins' alter ego), jointly and severally, in the amount of $4,889,053.90, plus prejudgment interest in the amount of $3,052,467.69, and against APAM in the amount of $2,500,000.00. Post-judgment

1. Evergreen's Exh. No. 2 (Confirmation Order) at p. 7 ¶ A.A, p. 13 ¶¶ 14–15.

2. Evergreen created a wholly owned trust named Evergreen Trust in April 1994 for the purpose of pooling investor funds, purchasing various investments and holding some of Evergreen's assets.

3. Mataeka AP Doc. Nos. 87, 88; Knight's Exh. No 1.

interest is accruing. The Mataeka Judgment is a debt owed to Evergreen.

The defendants appealed the Mataeka Judgment and the appeal is pending in the District Court.[4] They did not seek a stay of the Mataeka Judgment.

Knight transferred assets to his wife, Wanda Knight, shortly after entry of the Mataeka Judgment.[5] He transferred two ATVs, a Jaguar car, a Ford truck, and a trailer to his wife on April 20, 2006 for $61,000.00. The Debtor testified his wife, whose occupation is listed as "homemaker" in their joint federal tax returns with an annual salary of $11,408.00 from Oasis Benefits, Inc., paid for the assets using funds from her bank account. He, however, failed to produce any evidence establishing the source of payment, his receipt of payment, or the fair market value of the assets. He testified the assets are located at his home and he has unfettered access to them. The Debtor structured and manipulated his financial affairs to thwart Cuthill's collection efforts.

The Debtor and the other Mataeka AP defendants have not contested a debt is owed to Evergreen. They have contested the amount owed, the reason for the debt, and the characterization of the Mataeka "loan" transaction. The Debtor, Mataeka, Huggins, and APAM, in November 2002, attempted to tender to Cuthill check number 0091 in the amount of $1,539,955.49 as "payment in full" of the Mataeka "loan." Cuthill refused to accept the check.

GrayRobinson, former counsel for Knight, Huggins, Mataeka, IPA, and APAM, delivered to Cuthill on June 26, 2006 Check No. 0098 in the amount of $1,095,983.40 as payment on the Writ of Garnishment issued against GrayRobinson (Evergreen's Exh. Nos. 19, 20). Cuthill applied the payment to the Mataeka, Knight, and Huggins liability for the Mataeka Judgment and notated the payment as a payment made by Mataeka. The Debtor did not object to GrayRobinson's payment.

### Involuntary Petitions

Evergreen holds a liquidated claim against the Debtor pursuant to the Mataeka Judgment. Evergreen, through Cuthill, filed three involuntary Chapter 7 bankruptcy petitions against Knight, Huggins and APAM on June 28, 2006 ("Petition Date") as a means to seek collection of the Mataeka Judgment.[6] Evergreen, taking into account the GrayRobinson garnishment payment, was owed a minimum of $6,845,538.19 on the Mataeka Judgment on the Petition Date.

Cuthill believes Knight and Huggins have interests in off-shore trusts, which interests may be subject to turnover as property of the estate.[7] The Debtor was,

---

4. District Court Case No. 6:06–cv–00837–JA–DAB.

5. Evergreen's Exh. No. 7: Bill of Sale dated April 20, 2006 for sale of two ATVs to Wanda Knight for $15,000.00; Bill of Sale dated April 20, 2006 for sale of an equipment trailer to Wanda Knight for $2,000.00; Bill of Sale dated April 20, 2006 for sale of a Jaguar XJ6 to Wanda Knight for $8,000.00; and Bill of Sale dated April 20, 2006 for sale of a 2005 Ford F–350 to Wanda Knight for $36,000.00.

6. Cuthill instituted the involuntary cases: *In re Jon M. Knight,* Case No. 6:06–bk–01547–

ABB; *In re J. Anthony Huggins,* Case No. 6:06–bk–01546–ABB; *In re Atlantic Portfolio Analytics & Management, Inc.,* Case No. 6:06–bk–01549–ABB.

7. Evergreen's Exh. Nos. 3, 5. Evergreen filed emergency motions in the Huggins and Knight involuntary cases seeking the appointment of an interim trustee, which the involuntary debtors opposed. A joint hearing on the emergency motions was conducted on July 12, 2006 and Evergreen's motions were granted. The United States Trustee appointed Leigh R. Meininger as the Interim Chapter

and still may be, a settlor and a beneficiary of the Pacific Trust. The Debtor contends he is no longer a beneficiary of the trust. Cuthill has exhausted Evergreen's non-bankruptcy collection remedies within the United States.[8]

The involuntary debtors filed answers challenging the petitions.[9] A joint evidentiary hearing on the Knight and Huggins involuntary petitions commenced on July 26, 2006.[10] The evidentiary hearings were reconvened and completed on March 22, 2007.[11]

The Debtor and his wife were unresponsive to discovery requests propounded by Cuthill causing Cuthill to seek orders compelling production. The Debtor is highly educated and experienced in financial and business matters. The documents the Debtor produced are incomplete and his explanations for failing to produce documents are unpersuasive.[12] His failures to comply with discovery requests were purposeful.

The Debtor asserts he has no regular income and his wife pays all of the household bills.[13] He agreed that "but for the kindness of [his] wife, [he] would not be able to pay [his] monthly living expenses."[14] He testified he has a few hundred dollars of credit card debt relating to two credit cards (AAA and MBNA) and a loan obligation of $150,000.00 to Siam Capital Management, but failed to produce any documentation establishing such liabilities.[15] He is not making payments on any credit card or Siam Capital Management liabilities, to the extent such liabilities exist. He testified the law firm of Foley &

7 Trustee in the Huggins and Knight involuntary cases.

8. *See* July 26, 2006 transcript at p. 98: Counsel for Cuthill inquired "And you have no assets in the United States to satisfy that debt, correct?" to which the Debtor responded: "That's correct." Counsel for Cuthill: "Absent winning the lottery or the money from the trust coming back, there's no means for Mr. Cuthill to collect on his judgment, is there?" The Debtor: "There are no current assets available."

9. Knight's Exh. No. 3.

10. The completion of the Knight and Huggins evidentiary hearings and the commencement of the APAM evidentiary hearing were delayed due to the filing (on July 27, 2006) of the Motion for Recusal, Motion to Disqualify, Disclosure of All Ex Parte Communications and Revocation of all Prior Orders filed by the Debtor, Mataeka, Huggins, APAM, and International Portfolio Analytics, Inc. seeking, among other things, the recusal of the undersigned in all proceedings in which the movants are parties. The involuntary cases were held in abeyance during the pendency of the Recusal Motion. An Order denying the Recusal Motion was entered on February 27, 2007. The Order was not appealed and constitutes a final, non-appealable order. Cuthill filed a

motion in the Mataeka Appeal seeking to supplement the appellate record with the February 27, 2007 Order, which was granted by the District Court.

11. The Debtor sought to strike the Petition pursuant to 11 U.S.C. Section 109(h)(1) on the basis he did not obtain pre-petition credit counseling. The Debtor's Motion to Strike (Doc. Nos. 73, 74) was denied by Order entered on March 20, 2007 (Doc. No. 85). The APAM evidentiary hearing was commenced and concluded on February 22, 2007.

12. The Debtor explained he did not produce more bank statements because "I don't keep bank statements." Transcript of July 26, 2006 hearing at p. 101. Such a statement, given the Debtor's background and experience, is not credible. The Debtor could have requested copies of statements from his bank, but did not.

13. Transcript of July 26, 2006 hearing at pp. 94–95, 97.

14. Transcript of July 26, 2006 hearing at p. 97.

15. Transcript of July 26, 2006 hearing at pp. 91–92; Debtor's Exh. No. 6 at pp. 6–8.

Lardner was engaged in connection with the Mataeka Judgment appeal and his wife paid the firm's retainer.[16] He admitted he used APAM to pay his personal legal fees and then deducted such payments as an expense on his 2004 federal income tax return.[17]

The Debtor concedes he owes a debt to Evergreen pursuant to the Mataeka Judgment of least $443,972.09.[18] The Debtor has made no payments on the Mataeka Judgment; the only payment was made by GrayRobinson pursuant to the Writ of Garnishment. The Debtor asserts he has no ability to make payment.[19] His bank account reflects a negative balance. He testified he has no assets in the United States to satisfy the Mataeka Judgment debt.[20]

The Debtor's core objection to the involuntary petition is the Mataeka Judgment is subject to a bona fide dispute. He, in support of his bona fide dispute contention, reiterated the same arguments made in the Mataeka Judgment appeal.[21] He relied solely on the arguments contained in the Appellants' Initial Brief and did not attempt to offer any evidence beyond what was previously admitted into evidence in the Mataeka AP. He presented no new evidence or legal authority establishing the Mataeka Judgment is subject to a bona fide dispute.

### Summary

The Debtor conceded he has fewer than twelve creditors. He conceded he owes a debt to Evergreen pursuant to the Mataeka Judgment. Evergreen's claim is not contingent as to liability and Cuthill established a bona fide dispute does not exist. The Debtor has provided no new evidence or legal authority in support of reversal of the Mataeka Judgment. He has failed to identify a genuine issue of material fact that bears upon his liability to Evergreen or demonstrated a meritorious contention as to the application of law to undisputed facts. The Mataeka Judgment debt is not subject to a bona fide dispute.

The Mataeka Judgment debt is substantially greater than the Debtor's alleged credit card and Siam Capital Management liabilities. It constitutes almost 100% of his outstanding liabilities. The Debtor is not making payment on the Mataeka Judgment and is in default. He, based upon the totality of the circumstances, is generally not paying his debts as they come due.

Special circumstances exist in support of a finding Cuthill is entitled to an Order for Relief against the Debtor. The Debtor has attempted to thwart collection of the Mataeka Judgment through fraud, trick, artifice and/or sham. He, within days of entry of the Mataeka Judgment, transferred assets to his wife for no consideration. He purposefully withheld information and failed to provide complete responses to discovery requests. He has no assets in the United States to satisfy the Mataeka Judgment debt. He structured his financial affairs to ensure Cuthill has no adequate collection remedies other

16. Transcript of July 26, 2006 hearing at p. 92; Debtor's Exh. No. 6 at p. 21.

17. Evergreen Exh. No. 9.

18. The Debtor, pursuant to his assertions regarding the $6,500,000.00 transfer, and taking into account the garnishment payment made by GrayRobinson, would owe Evergreen a minimum of $443,972.09.

19. Transcript of July 26, 2006 hearing at pp. 97–98.

20. Transcript of July 26, 2006 hearing at p. 98.

21. *See* Knight's Exh. Nos. 11, 13; Evergreen's Exh. Nos. 22, 24 (Appellants' appellate briefs).

than through an involuntary bankruptcy proceeding.

## CONCLUSIONS OF LAW

### 11 U.S.C. Section 303(b)(2)

Cuthill, on behalf of Evergreen, filed the Involuntary Petition against the Debtor pursuant to Section 303(b)(2) of the Bankruptcy Code. Section 303(b)(2) permits an entity holding a claim against a debtor to file an involuntary petition as the sole petitioning creditor where: (i) the debtor has fewer than twelve creditors; (ii) the filing creditor holds the aggregate of at least $12,300.00 of the claims; and (iii) the claims held by the filing creditor are not contingent as to liability or the subject of a "bona fide dispute as to liability or amount...." 11 U.S.C. §§ 303(b)(1), (2) (2005). Section 101(5) broadly defines the term "claim" to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

■ The Bankruptcy Code does not define "bona fide dispute." The majority of courts, including this Court, have adopted an objective test for determining whether a bona fide dispute exists.[22] The

Court of Appeals for the Third Circuit articulated the objective test as: a bona fide dispute exists "[i]f there is a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to disputed facts...." B.D.W. Assocs., 865 F.2d at 66–67. Articulated another way: "[T]he bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of [the] debt." In re Busick, 831 F.2d 745, 750 (7th Cir.1987).

■ "Thus a bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability." In re Byrd, 357 F.3d at 437. "A bona fide dispute must exist as to the validity of an entire claim and not merely some of the claim." In re Cohn–Phillips, Ltd., 193 B.R. 757, 763 (Bankr.E.D.Va. 1996).

■ "Establishing the existence or absence of a bona fide dispute involves a shifting burden of proof." In re Biogenetic Techs., Inc., 248 B.R. at 856. The petitioning creditor has the initial burden to establish a prima facie case that a bona fide dispute *does not* exist as to both liability and amount. In re Byrd, 357 F.3d at 438; In re BDC 56 LLC, 330 F.3d at 118.

---

**22.** 2 COLLIER ON BANKRUPTCY ¶ 303.03[2][b], at 303–28–29 (15th ed. rev.2005). Circuit Courts of Appeals adopting the objective test include: *Platinum Fin. Serv. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 437 (4th Cir.2004); *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 117–18 (2d Cir.2003); *Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir.2002); *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220–21 (5th Cir.1993); *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir.1991); *B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66–67 (3d Cir.1989); *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1543–44 (10th Cir. 1988); *In re Busick*, 831 F.2d 745 (7th Cir. 1987). The Bankruptcy Appellate Panel for the Sixth Circuit in *Booher v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 965 (6th Cir. BAP 1998), the District Court for the First Circuit Court of Appeals in *Efron v. Gutierrez*, 226 B.R. 305 (D.P.R.1998), and the United States Bankruptcy Court for the Middle District of Florida, Tampa Division in *In re Biogenetic Techs., Inc.*, 248 B.R. 852, 856 (Bankr.M.D.Fla.1999) have also adopted the objective approach. This Court adopted the objective test in *In re Manhattan Indus., Inc.*, 224 B.R. 195 (Bankr.M.D.Fla.1997).

Once a prima facie case is established the burden shifts to the debtor to demonstrate a bona fide dispute *does* exist. *In re Byrd,* 357 F.3d at 439; *In re Rimell,* 946 F.2d at 1363. "Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden . . . ." *Id.* at 1365. "The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists." *In re Byrd,* 357 F.3d at 437.

■ Some courts have determined a claim that has been reduced to an unstayed judgment cannot be the subject of a bona fide dispute. *In re Norris,* 183 B.R. 437, 452–54 (Bankr.W.D.La.1995); *In re Galaxy Boat Mfg. Co. Inc.,* 72 B.R. 200, 202 (Bankr.D.S.C.1986). "A claim based on an unstayed judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute." *In re Drexler,* 56 B.R. 960, 967 (Bankr.S.D.N.Y. 1986). "It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long standing enforceability of unstayed final judgments" for a bankruptcy court to find such judgment was, until reversed, subject to a bona fide dispute. *Id.*

### *11 U.S.C. Section 303(h)*

Section 303(h) provides, after the trial on an involuntary petition, "the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—(1) the debtor is generally not paying such debtor's debts as such debts become due unless

such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1).[23]

■ The courts apply a flexible totality of the circumstances test in determining whether a debtor is "generally not paying" his debts, which focuses on the number of unpaid claims, the amount of the claims, the materiality of nonpayment and the overall conduct of the debtor's financial affairs. *In re Concrete Pumping Serv.,* 943 F.2d 627, 630 (6th Cir.1991); *Fed. Fin. Co. v. DeKaron Corp.,* 261 B.R. 61, 64 (S.D.Fla.2001).

■ The courts recognize it may be difficult for a single-creditor petitioner to establish the requirements of Section 303(h), particularly whether the debtor is generally paying his debts as they come due.[24] Although the plain language of Section 303(b) allows a single-creditor filing, some courts have carved out exceptions and found 303(h) is satisfied where special circumstances exist. 2 COLLIER ON BANKRUPTCY ¶ 303.04[6], at 303–44. Special circumstances include: (i) the lack of an adequate remedy for the creditor pursuant to state or federal law if the order for relief is not granted; or (ii) a showing of fraud, trick, artifice or sham by the debtor. *In re Smith,* 123 B.R. 423, 425–26 (Bankr. M.D.Fla.1990); *In re R.V. Seating, Inc.,* 8 B.R. 663, 665 (Bankr.S.D.Fla.1981); *Matter of 7H Land & Cattle Co.,* 6 B.R. 29, 34 (Bankr.D.Nev.1980).

### *Conclusion*

Cuthill is the representative of the Evergreen estate pursuant to the confirmed

---

**23.** Collier explains: "[W]hile the term 'bona fide dispute as to liability or amount' is the same in subsections (b) and (h) of section 303, it relates to satisfying different requirements under the Code and may involve entirely different parties or a party with different types of claims." 2 COLLIER ON BANKRUPTCY ¶ 303.03[2][b], at 303–27.

**24.** "[I]t is important to distinguish between the ability of a single creditor to commence a case under section 303(b) and the ability of that one creditor to satisfy the elements of section 303(h)." 2 COLLIER ON BANKRUPTCY ¶ 303.04[6], at 303–44.

Plan, the Confirmation Order, and 11 U.S.C. Section 1123(b)(3)(B). Evergreen, as of the Petition Date, held a liquidated claim, that is not contingent as to liability, against the Debtor by virtue of the Mataeka Judgment. The Debtor concedes he has fewer than twelve creditors and Evergreen's claim exceeds the Section 303(b) statutory aggregate amount of $12,300.00. He conceded he is liable to Evergreen and owes Evergreen at least $443,972.09.

The core issue for determination is whether Evergreen's claim is the subject of a bona fide dispute. The Mataeka Judgment is an unstayed judgment that is enforceable against the Debtor. Cuthill established no bona fide dispute exists regarding the liability or the amount of the debt owed by the Debtor to Evergreen. The Debtor failed to demonstrate a bona fide dispute exists. He concedes he owes a debt to Evergreen. His disagreement as to the amount owed does not constitute a bona fide dispute. He, as his only evidence, simply reiterated the Appellants' bases for challenging the Mataeka Judgment on appeal. He failed to establish there is an objective basis for either a factual or legal dispute as to the validity of a Mataeka Judgment debt. Evergreen's claim is not subject to a bona fide dispute as to liability or amount.

Cuthill has established he is entitled to relief pursuant to 11 U.S.C. Section 303(b)(2). Evergreen qualifies to file an involuntary petition pursuant to Section 303(b)(2).

Cuthill has established the requirements of 11 U.S.C. Section 303(h). The totality of the circumstances reflects the Debtor was not generally paying his debts as they came due as of the Petition Date. Special circumstances exist for finding the requirements of 303(h) have been met. Cuthill lacks an adequate remedy outside of bankruptcy for collecting on the Mataeka Judg-ment and the only collection means exist within the bankruptcy forum. Cuthill established the Debtor has engaged in fraud, trick, artifice or sham in an attempt thwart collection of the Evergreen debt. An Order for Relief is due to be entered.

Accordingly, it is

**ORDERED, ADJUDGED and DE-CREED** that Evergreen's Motion to Strike the Objection filed by the Debtor is hereby **GRANTED** the Debtor's Objection (Doc. No. 83) is **DENIED;** and it is further

**ORDERED, ADJUDGED and DE-CREED** that each of the elements of 11 U.S.C. Sections 303(b) and (h) have been established and an Order for Relief against Jon M. Knight shall be entered. The Clerk of Court is hereby directed to issue an Order for Relief on the Involuntary Petition.